PRESIDENT, DIRECTORS AND COMPANY OF THE QUINSIGAMOND BANK *vs.* GEORGE HOBBS.

A promissory note discounted by a bank at a higher rate of interest than is allowed by the Rev. Sts. *c.* 36, §§ 59, 60, is not thereby rendered void.

A witness who testifies that he absconded to avoid arrest for debt cannot be cross-examined upon the amount of money in his possession at the time of his flight, in order to show that he ran away through fear of a criminal prosecution, and thus to affect his credibility.

After a party has introduced evidence that the reputation of a witness for truth is bad, the party who called him may introduce evidence that his reputation was good until his fail-ure in business some months previous, although bad since.

A witness who has testified that the reputation of another witness for truth is good cannot be asked on cross-examination what was the reputation of that witness for integrity.

The question whether the whole of a promissory note was written at the same time is proper to be put to an expert.

The decision of the judge presiding at a trial upon the admissibility of a witness as an expert is conclusive, if he declines to report the evidence upon which his decision was made.

ACTION OF CONTRACT upon a promissory note made by Henry D. Stone, and payable " at Bank of Commerce, Boston," to the defendant and indorsed by him. Answer, that the defendant indorsed the note for the accommodation of Stone; that

after the indorsement, and before delivery to the plaintiffs, it was materially and fraudulently altered by inserting the words " at Bank of Commerce, Boston ; " and also that the note was void and the plaintiffs had no right of action thereon, because, when it was discounted, it was corruptly agreed between the plaintiffs and Stone that the plaintiffs should take a greater rate of discount than six per cent. a year, calculated according to the established rules of banking, adding the rate of exchange between Worcester and Boston.

At the trial at April term 1858 before *Merrick,* J., it appeared that the note was indorsed and delivered by the defendant for Stone's accommodation, and that the plaintiffs were the holders of the note and had duly demanded payment of Stone, and given notice to the defendant as indorser.

The defendant offered evidence that the plaintiffs discounted the note for Stone, and received for discounting it a greater rate of interest than six per cent. a year, according to the established rules of banking, and in addition to the rate of exchange between Worcester and Boston. But the judge, being of opinion that this would not, if proved, render the note void, rejected the evidence.

The defendant introduced evidence that the note had been fraudulently altered by Stone, as alleged in the answer. The plaintiffs, to rebut this, called Stone, who testified that no alteration whatever had been made in the note since the defendant's indorsement. In order to show that Stone was testifying under a strong apprehension of criminal proceedings against him on account of such an alteration, the defendant asked him, upon cross-examination, whether he did not leave his residence in Worcester and conceal himself shortly after the maturity of the note ; to which he replied that he did run away from Worcester about that time ; that he did so to avoid being arrested on civil suits, which he feared or expected would be commenced against him ; and afterwards, for the purpose of avoiding arrest, travelled in different parts of the United States ; but, having heard that he had been accused of forgery, determined to return at once to Worcester ; and on the Saturday evening previous to

the trial of this action, was arrested at Springfield, while on his way to Worcester. To show that at the time he absconded he had ample means of procuring bail in any civil suits then likely to be instituted against him, the defendant asked him what sum of money he had in his possession at the time of his departure from Worcester. This question was objected to by the plaintiffs; and excluded by the judge as immaterial.

The defendant called witnesses in relation to the general reputation of Stone for truth and veracity, who testified that it was bad. The plaintiffs in reply called several witnesses upon the same subject, who testified that until the time of his failure in January last his general reputation for truth and veracity had been good; that since that time it had been bad. The answers of these witnesses as to what had been his general reputation before his failure were objected to by the defendant; but admitted by the judge.

One of the plaintiffs' witnesses testified that the general reputation of Stone for truth and veracity was still good, and was asked, on cross-examination, what was Stone's reputation as a man of integrity, and whether the witness had ever heard his integrity questioned; but these questions, being objected to by the plaintiffs, were excluded.

The plaintiffs called one Southgate to testify as an expert, that in his opinion the note in suit had not been altered; but that the whole of the written part of it, including the words, "Bank of Commerce, Boston," was written at one and the same time. After full examination and cross-examination of the witness, the judge decided that it was satisfactorily proved that the witness was a person of skill and experience upon this particular subject, and capable of forming an opinion relative thereto as a person of skill and experience; and that his opinion might therefore be asked, after sufficient inspection and examination of the note; and he testified that in his opinion the whole of the written part of the note in suit was written at the same time. The defendant's counsel objected that it was not competent for the plaintiffs to give in evidence the opinion of any expert on this subject; and also that the evidence upon which

the judge decided that Southgate was an expert was insufficient. But these objections were overruled.

The defendant further contended that he had a right to have the evidence upon this subject reported, or stated in a bill of exceptions, that the whole court might determine whether any evidence had been adduced which would authorize the admission of the witness as an expert. But the judge declined to report the evidence, or to allow it to be stated in the bill of exceptions.

The jury returned a verdict for the plaintiffs, and the defendant alleged exceptions.

*C. Allen & G. F. Hoar,* for the defendant. 1. The note in suit, being for an illegal consideration, is void. This is the general principle. *Russell* v. *De Grand,* 15 Mass. 39. *Wheeler* v. *Russell,* 17 Mass. 258, & cases cited. And the case at bar falls within it. *Sts.* 1809, *c.* 38, § 2; 1840, *c.* 94. Rev. Sts. *c.* 36, §§ 59, 60. *Springfield Bank* v. *Merrick,* 14 Mass. 322.

The Rev. Sts. *c.* 36, §§ 59, 60, provide that no bank shall take any greater rate of interest or discount than six per cent. a year, calculated according to the established rules of banking, and adding on drafts and bills of exchange the current rate of exchange; and for every offence against these provisions, " the bank so offending shall forfeit to the use of the Commonwealth the sum of five hundred dollars, to be recovered by the treasurer, who shall prosecute for the same." Taking these sections by themselves, there is no reason why the general principle should not apply.

The provision of § 58, that " every loan or discount made contrary to the provisions of this section, shall be so far void that the bank shall not recover the amount thereof from the borrower or from any other person," does not control the construction of the subsequent sections, but was introduced solely for the benefit of the borrower. *Sts.* 1828, *c.* 97, § 1; 1834, *c.* 203. Commissioners' Report on Rev. Sts. *c.* 36. *Western Bank* v. *Mills,* 7 Cush. 539. It cannot be presumed that the legislature intended to make the contract void for one evasion of the statute, and not for another. Chapter 36 contains several other prohibitions, violations of which have been held to make the

contract void. *Atlas Bank* v. *Nahant Bank,* 3 Met. 581. *White* v. *Franklin Bank,* 22 Pick. 181. *Farmers & Mechanics' Bank* v. *Jenks,* 7 Met. 592. *Springfield Bank* v. *Merrick,* 14 Mass. 322.

The penalty is a very insufficient remedy, and would at times be much smaller than sums exacted in single loans by large banking institutions.

Illegal discounts by banks do not fall within the general statute governing usury. Rev. Sts. *c.* 35. The two offences are essentially distinct in their nature, and are subject to distinct penalties, and banks, if subject to both, are liable to be punished twice for the same offence. Rev. Sts. *c.* 36, § 64; *c.* 126, §§ 27, 29; *c.* 133, § 10. *Commonwealth* v. *Wyman,* 8 Met. 247. *Floyer* v. *Edwards,* Cowp. 112. 2 Parsons on Con. 421, 427. The conclusion contended for by the defendant therefore follows; otherwise, the borrower is without a remedy, and the court must render judgment for the fruits of an illegal contract. There is a broad distinction in principle between banks, that have no power to contract unless conferred by the legislature, and individuals, who have full power unless restrained by legislation. This defence is open to the defendant. *Newell* v. *Holton,* 10 Gray, 349. *Van Schaack* v. *Stafford,* 12 Pick. 565. *Dunscomb* v. *Bunker,* 2 Met. 8.

2. The defendant should have been allowed to cross-examine Stone concerning the amount of his property when he absconded. The facts that he was testifying under a strong apprehension of criminal prosecution and fled to avoid arrest affected his credibility.

3. The judge erred in admitting evidence of Stone's reputation at previous times. His present reputation was all that was material, or inquired of by the defendant, and the plaintiffs had no right to go farther into evidence of his reputation than to contradict the evidence of the defendant, which this evidence had no tendency to do.

4. The inquiry as to Stone's reputation for integrity should have been admitted, in order to give the jury a full knowledge of his standing. *Hume* v. *Scott,* 3 A. K. Marsh. 261. 1 Greenl. Ev. § 461.

5. The question put to Southgate was not one which admitted of the testimony of experts.    How could an expert know whether the note was all written at one time, or whether the words alleged to have been added were written the day after the rest ?

6. Although the question whether Southgate was an expert was wholly for the presiding judge, so far as it was a question of fact, yet his decision upon the law involved in the question is open to revision.    Rev. Sts. *c.* 81, § 28.    *People* v. *Spooner*, 1 Denio, 343.    *Davenport* v. *Holland*, 2 Cush. 1.    And whether there was any evidence at all was a question of law.    *Slater* v. *Jepherson*, 6 Cush. 129.

*F. H. Dewey & E. B. Stoddard*, for the plaintiffs.

METCALF, J.*    1. The defendant's answer alleges that the note in suit is void, and that the plaintiffs have no right of action thereon, by reason of the taking of unlawful interest by them, upon their discounting it for the maker.    And this is the single ground on which it has been argued that the note is void.    Such being the only defence now relied on, we are of opinion that the judge rightly refused to admit evidence that the plaintiffs discounted the note at an unlawful rate of interest; because such evidence, if admitted and believed by the jury, would not have shown that the note was void.

It is contended for the defendant that this note is made void by § 59 of *c.* 36 of the Rev. Sts., which enacts that " no bank in this state shall take any greater rate of interest or discount on any note, draft or security, than at the rate of six per cent. a year; but such interest or discount may be calculated and taken according to the established rules of banking ; provided, that in discounting drafts or bills of exchange the bank may, in addition to the said interest, charge the then existing rate of exchange between the place where such draft may be discounted and the place where it is payable."    By the next section of the same chapter (§ 60) it is declared that for every offence against the provisions in § 59, the bank so offending shall forfeit to the

---

* THOMAS, J. did not sit in this case.

use of the Commonwealth the sum of five hundred dollars. And if these were the only statute provisions concerning unlawful interest, they might sustain this defence, although they do not expressly make void a note, draft or security, when discounted at a greater rate of interest than therein allowed. *Wheeler* v. *Russell*, 17 Mass. 258. *Allen* v. *Hawks*, 13 Pick. 82. But in construing this § 59, and deciding upon its effect, we must take it in connection with other statute provisions *in pari materia*. *Church* v. *Crocker*, 3 Mass. 21. *Goddard* v. *Boston*, 20 Pick. 410. By § 58 in this same chapter 36 of the Rev. Sts., " no bank shall directly or indirectly make any loan, or grant any discount, unless the amount of the loan, or the proceeds of the discount, shall be payable by the bank, on demand, in specie or in the bills of the bank; and every loan or discount, made contrary to the provisions of this section, shall be so far void that the bank shall not be enabled to recover the amount thereof from the borrower or from any other person; and every bank, offending against the provisions of this section, shall forfeit the sum of five hundred dollars." For the violation of the provisions of each of these sections, the same penalty is imposed; but the forbidden contract is declared void only in the first. And we cannot doubt that the omission, in § 59, to declare that the contract therein forbidden should be void, was an intentional omission, designed to leave in force, against banks, the provisions in the next preceding chapter (*c.* 35) of the Rev. Sts. concerning the " interest of money." By § 2 of that chapter, it is declared that no contract or assurance for the payment of money, with interest at a greater rate than six per cent. for a year, shall be thereby rendered void, but that when greater interest is reserved, taken or received, threefold the amount of that whole interest shall be forfeited. And we cannot suppose that the legislature intended, by § 59 of *c.* 36, to repeal this provision, so far as it applied to banks, and to revive against them the old law by which usurious contracts were void.

2. The defendant was rightly refused permission to inquire of Stone how much money he had in possession when he departed from Worcester. Stone had testified that he left

Worcester for fear of arrest in civil suits, and that he returned when he heard that he had been accused of forgery. The avowed purpose of the question, when proposed to be put, was to show that when he left Worcester he had ample means of procuring bail in any civil suits then likely to be instituted against him; and the argument now is, that he therefore fled to avoid criminal prosecution, and that the credibility of his testimony was affected by reason of its being given under strong apprehension of such prosecution. But this is an inference which a jury could not justly deduce from the premises. Besides; they already knew Stone's position as a witness, and that he was testifying in a case in which he was accused of forgery; and they therefore had full means of judging what effect this should have on his credibility. His answer to the proposed question would therefore have been immaterial.

3. The witnesses, whom the defendant called to impeach Stone, having testified that his reputation for truth was good until the time of his failure, and bad since, we think both parts of their testimony were properly submitted to the consideration of the jury. See *Willard* v. *Goodenough*, 30 Verm. 397.

4. In this commonwealth, the question, what is the reputation of a witness for integrity, cannot be put for the purpose of discrediting him, but only the question what is his general reputation for truth. 1 Greenl. Ev. § 461, note.

5. The authorities show that Southgate's testimony, that in his opinion all the words in the note in suit were written at the same time, was within the legal province of an expert. *Goodtitle* v. *Braham*, 4 T. R. 494. 2 Taylor on Ev. § 1274. *Commonwealth* v. *Webster*, 5 Cush. 301. In *Cooper* v. *Bockett*, 4 Moore P. C. 433, the judicial committee and lords of the privy council called before them a witness, who was an expert in writings, for the purpose of obtaining his opinion whether a line, that surrounded the names of the witnesses to a will, was made before or after their signature.

6. The question whether Southgate was shown to be competent to testify as an expert depended on the facts and circumstances that appeared on his preliminary examination, which

are not reported in the bill of exceptions. If the judge had seen fit to report them, and bring before the whole court the question of the legal sufficiency of the evidence upon which his ruling was made, it might undoubtedly have been revised. Though *dicta* are to be found, which assert the right of a party against whom such a ruling is made, to bring it to the full court for revision, we believe that no exception has been sustained by this court in any case in which the judge who made the ruling had not reported all the evidence. *Foster* v. *Mackay*, 7 Met. 531. *Baxter* v. *Abbott*, 7 Gray, 78. *Hatch* v. *Carpenter*, 9 Gray, 271. And upon full consideration, the court are of opinion that, upon the admissibility of a witness as an expert — as upon the analogous question of the incompetency of a witness, on the ground of interest, before the practice act— when all the evidence is not reported, and it does not appear to the court that the decision as to the competency of the witness turned on a question of law, we cannot revise the action taken by the judge when all the facts were before him. See *Dole* v. *Thurlow*, 12 Met. 159 ; *Odiorne* v. *Bacon*, 6 Cush. 190, 191 ; *Gorton* v. *Hadsell*, 9 Cush. 511 ; *Chase* v. *Breed*, 5 Gray, 443, 444.

*Exceptions overruled.*