# SUPREME COURT.

## THE PEOPLE agt. WILLIAM HAYNES.

It is unnecessary to state in an *indictment. the names of the jurors* by whom it was found.

An objection to an indictment that it does not charge that the felonious crime was *wilfully done*, is not well taken, where the charge is stated that the defendant "unlawfully, maliciously and feloniously" committed the act charged; as this language is equivalent to a charge that the act was wilfully and designedly done.

Where the indictment charged that the defendant " set fire to a certain grist-mill, then and there being, owned by and in possession of one F. W.," *Held*, that this was sufficient to meet the requirements of the statute as regards the crime of arson in the third degree, which declares the wilfull setting fire to a grist-mill, to be arson in the third degree

A *witness* is not incompetent to testify in a criminal case, because an *accomplice*. Such fact affects his *credibility* only; and it is for the jury to say whether his statement is credible, and a safe reliance for a verdict against the party charged. Such is now the settled rule in this state, even where the accomplice stands entirely *uncorroborated*.

But notwithstanding the jury may convict on the unsupported testimony of an accomplice, it is their manifest duty to scan the testimony with the utmost severity.

Where a case is sought to be established by the testimony of an accomplice, who stands in the main, if not wholly, uncorroborated, it is due to the party accused and to the cause of justice that none but evidence clearly admissible, under the severest test, should be allowed; and that none in the least bearing on the question of credibility and admissible, should be excluded.

The jury must determine the *credibility* of a witness at the *time he testifies*. His standing for truth and veracity must be established at that time.

Where the court limits the number of impeaching witnesses on each side, it does not thereby limit the right of *cross-examination*.

*Fourth District, General Term, July,* 1868.

*Before* JAMES, *P. J.,* BOCKES, ROSEKRANS *and* POTTER, *Justices.*

THE defendant was convicted at the Schenectady Oyer, 1868, of the crime of arson, in the third degree. The specific offense charged in the indictment, was that on the 4th of April, 1867, he feloniously, in the night time, set

fire to a certain grist mill, the property of one Frederick Whittlesey.

On the trial, evidence was given by one Margaret A. Bronk, that she set the fire at the request and on the instigation of the defendant; who as she testified, prepared the materials to be ignited, and was at the time in the immediate vicinity of the mill, with the purpose of rendering aid in effecting her escape from the premises if necessity required. The conviction rested solely on the evidence given by this witness; the corroborating testimony, if indeed there was any, being so slight and insignificant, as to be unworthy of notice. The witness, a married woman aged about twenty-five years, testified that she had been for many years on terms of criminal intimacy with the defendant; that he was the father of two of her children; their intimacy was at the time known to her husband; that their relations for a time prior to the fire, were unfriendly, but that they had become reconciled and again intimate. The witness further stated that the defendant first asked her to induce her husband to burn the mill, and it being suggested to him, he refused; that the defendant had given her money at various times; on one occasion four ten dollar bills; that she paid two dollars to Mr. Stevens and the rest to Mr. Westfall; that the defendant stated to her as his reason for wishing the destruction of the mill, that he wanted to get the mill seat. The defendant formerly owned the mill primises, and sold them to Whittlesey in 1864, but had been fully paid therefor. The last payment having been made in February preceding the fire, to prevent a foreclosure of a mortgage taken by the defendant for part of the purchase money.

After such payment the defendant had no right or interest in the property destroyed. Evidence was also given, tending to an impeachment of the witness irrespective of her position as an admitted accessory to the crime charged against the defendant; she was contradicted in some of her

statements, and evidence of general bad character was given. The counsel for the defendant asked the court to direct an acquittal on the ground: 1st. That the indictment did not contain the names of the jurors by whom it was found: 2d. That it does not charge, that the setting fire to the building was wilfully done: 3d. That it does not charge expressly or by implication, that the building alleged to have been burned was not the subject of arson in the first degree.

The court declined to direct an acquittal as requested, and the counsel excepted. Exceptions were also taken to the admission and rejection of evidence, and also to portions of the charge as well as to refusals to charge, which excep-tions are hereafter considered in so far as they are deemed to affect the rights of the defendant

JOHN L. HILL, *district attorney.*
N. C. MOAK *and* HENRY SMITH, *for the defendant.*

*By the Court,* BOCKES, J.—The refusal of the court to direct an acquittal of the defendant was manifestly right. It was unnecessary to state in the indictment the names of the jurors by whom it was found. This was expresly decided in the case of *The People* agt. *Bennett,* (37 *N. Y.,* 117). The second objection urged, that the indictment omits to charge that the setting fire to the building was wilfully done, was not well founded in fact. It was charged that Haynes " unlawfully, maliciously, and felo-niously in the night time, did set fire to a certain grist-mill." This language is equivalent to a charge that the act was wilfully done. It is in point of fact, a charge, that it was *designed,* intended, hence wilfull. The third ground of objection is also untenable. The charge is that the defendant " set fire to a certain grist-mill, then and there being, owned by and in possession of one Frederick Whitt-lesey." This was sufficient to meet the requirements of the statute as regards the crime of arson in the third degree,

which declares the wilfull setting fire to " a grist-mill to be arson in the third degree."

The case was plainly one for the jury on the evidence. It would have been manifestly improper to have taken it from them on any of the grounds urged. It is true the only evidence to establish the guilt of the party, was the uncorroborated testimony of a confederate in the crime. But whatever opinion the court may have entertained in regard to the integrity and reliability of the witness, the question of guilt or innocence was for the jury. The witness was not incompetent to testify because an accomplice, such admitted fact affected her ᵤcredibility only, and it was *for the jury* to say, whether her statement was credible and a safe reliance for a verdict against the party charged. Such is now the settled rule in this state, even where the accomplice stands entirely uncorroborated. Mr. Justice BEARDSLEY remarked in *The People* agt. *Costello*, (1 *Denio*, 83), that "although it had often been said by judges and elementary writers, that no person should be convicted on the testimony of an accomplice, unless corroborated by other evidence, still there is no such inflexible rule of law. It is a question for the jury, who are to pass upon the credibility of an accomplice, as they must upon every other witness." He adds, "his statements are to be received with great caution and the court should always so advise; but after all, if his testimony carries conviction to the mind of the jury and they are fully convinced of its truth, they should give the same effect to such testimony as should be allowed to that of an unimpeached witness, who is in no respect implicated in the offense." This language of Mr. Justice BEARDSLEY was quoted with approval in *Haskins* agt. *The People*, (16 *N. Y.*, 344–352). Judge COMSTOCK said in *The People* agt. *Doyle*, (21 *N. Y.*, 578–9,) "there is no rule of law which prevents a conviction on the testimony of an accomplice alone. The utmost caution should undoubtedly be exercised; but juries are nevertheless at liberty to con-

vict on the unsupported testimony of a confederate in the crime.

To the same effect are the remarks of Mr. Justice INGRAHAM, in *Dunn* agt. *The People*, (5 *Park. Cr. R.*, 120; *see also* 1 *Greenleaf on Ev.*, § 380, 381.) But notwithstanding the jury may convict on the unsupported testimony of an accomplice, yet it is, as remarked by Mr. Greenleaf, so generally the practice on the trial, for the court to advise an acquittal, in the absence of corroborating proofs, that its omission would be regarded as an omission of duty on the part of the judge; and the same learned writer on the law of evidence adds that, so great respect is always paid by the jury to such advice from the bench, that it may be regarded as the settled course of practice, not to convict in any case of felony upon the sole and uncorroborated testimony of an accomplice.

It is a well settled rule, not to be departed from in criminal cases especially, that no issue shall be decided against a citizen without testimony equivalent at least, to that of one credible witness. Therefore, verdicts rendered on the testimony of confederates, wholly uncorroborated, are of doubtful propriety, and will not in general be allowed to stand, if the witness be otherwise at all impeached.

It was the manifest duty of the jury in this case, to scan the testimony of Mrs. Bronk with the utmost severity. In addition to the fact that she admitted herself to be a felon, she was shown to be unblushing in her immoralities and notoriously untruthful; while several witnesses testified to the contrary, not one of the eleven, who spoke to her general character, gave the opinion that she was *then* a credible and reliable person. She was also contradicted in her statements, given as a witness, on the stand. Nor does her story commend itself to the fullest credence by reason of its inherent probability. It is difficult, if not impossible, to find a motive for the crime. There was no ill-feeling existing between the defendant and Whittlesey, the owner of the

mill, to excite hatred or induce revenge. Their relations were friendly. The defendant had no direct interest to be subserved by its destruction. The remote hope, as stated by Mrs. Bronk, that he might obtain the mill-seat, should the mill be burned, was infinitely weak as an inducement to commit a high crime. His chance to obtain it would then be one in common with all his neighbors, and others who might desire to secure it by fair, open purchase. The destruction of the mill gave him no advantage over other competitors for the site. Again, she testified that the defendant wanted her to get her husband to burn the mill for him. That she mentioned the subject to him, and he refused, saying that the defendant hadn't money enough to hire him to do it; that he could not get him to state's prison. Was it not strange, indeed, that the defendant should seek the aid of a man in the commission of a crime, whose jealousy and hatred were already aroused by reason of his known intimacy with his wife? Would he not be cautious about putting himself in that man's power? Mrs. Bronk says, the defendant then persuaded her to burn the mill. Was it not strange that he should put himself in her power? Why not do the act himself, and avoid the risk of having his purpose known to others? He did not seek to avoid suspicion by absence, for Mrs. Bronk says he was at or near the mill when she applied the match, and he must, therefore, have fled from it with her, or at the same time she did. It was in proof that he was at his own house when the alarm was given.

Now, in this condition of the case, the jury must have been in some doubt, some perplexity as to the propriety of convicting on the testimony of this confederate. They are pesumed to have been warned by the court of the danger attending a conviction on testimony from a source confessedly corrupt. They doubtless examined the evidence with great care, as they had been instructed, and were bound to do, considering every minute

circumstance tending in the least degree to a corroboration of the statement made by the witness. They would be undoubtedly influenced by slight confirmatory facts, very little would turn the scale and control the verdict. A just regard to the rights of the accused, therefore, demands an observance of the strictest rules in the admission and rejection of evidence. Let us now see if any evidence was improperly admitted bearing on the question of corroboration.

Mrs. Bronk testified that the defendant promised her four hundred dollars if she would burn the mill; which sum would buy for her a place she desired to purchase. It seems that the place was owned by Westfall, for whom Stevens was agent.

She further testified that soon after the fire, Stevens called on her and inquired if she wanted the place; whereupon she went to the defendant at the paper-mill, and obtained from him forty dollars,—four ten dollar bills; that she paid Stevens ten dollars, and afterwards went to Quaker street, to complete the transaction, and then paid the balance of the money, thirty dollars, to Westfall. Stevens was called and testified that Mrs. Bronk gave him ten dollars, a ten dollar bill, to bind the bargain for the place; then arranged with him to meet him at Quaker street to complete the transaction for the property; and that they met at Quaker street, pursuant to the arrangement; and then she paid three ten dollar bills to Westfall's agent. All and every part of this evidence was admitted against the defendant's objection. If the evidence tended to corroborate Mrs. Bronk in any material part of her testimony it was properly admitted, otherwise its admission was error inasmuch as it was urged upon the consideration of the jury as matter of corroboration, and doubtless, to a greater or less extent influenced their verdict. Unquestionably this evidence tended to prove that Mrs. Bronk told the truth in several particulars. But that alone was not sufficient to authorize

its admission as corroborating proof. As was said in *Rex agt. Addis*, (6 *Car. and P.*, 338), the corroboration of an accomplice ought to be as to some fact or facts, the truth or falsehood of which go to prove or disprove the offense charged against the prisoner." To the same effect is the decision in *The Com.*, agt. *Bosworth*, (22 *Pick*, 397) ; also in *Rex.* agt. *Webb*, (6 *Car. and P.*, 595); and also in *Rex.* agt. *Wilkes*, (7 *Car. and P.*, 272). In the latter case, ALDERSON B. says : "the confirmation which I always advise juries to require, is a confirmation of the accomplice in some fact which goes to fix the guilt on the particular person charged." I am aware that there are cases holding that the confirmatory proof need not in all instances affect the identity of the accused, or necessarily connect him with the offence charged. But the decisions above cited are now held better to accord with sound principles of law. It seems therefore, that if corroborating evidence be admitted, it must be such as has some necessary connection with the guilt of the party charged or of the correctness of the statement of the accessory in relation to such evidence. True, a party may be convicted, (although he in general will not be,) on the uncorroborated evidence of an accomplice, but if the case is to be strengthened by corroborating proof, the rights of the accused should not be prejudiced by confirmation on immaterial points or as to facts which in no way connect him with the offense. Mrs. Bronk testified, that the defendant agreed to arrange and in fact, arranged the combustibles, left the window open for her to enter, placed a box under the window, to render access easy,—was near the mill when she set the fire and left the building, that he then signaled her. All these facts were material on the question of the defendants guilt, and proof of either by the testimony of another person, would have been admissible to corroborate Mrs. Bronk. So too the fact of giving her money soon after the fire, she having sworn that he agreed so to do, if an unusual circumstance, or if the sum was unusual in amount,

might be admissible. But the fact proved by other witnesses, that the mill was burned at the time she stated, was no corroboration of her testimony, that it was burned at the defendants instigation. She also, swore that she met the defendant on the evening of the fire, in the street and at her house, when the perpetration of the crime was arranged between them; for him to meet her at her house or openly in the street was no unusual circumstance. Would other proof of the fact, that they so met, have been corroborating evidence on the issue of the defendants guilt? clearly not. But of what they said, if overheard, and if it comported with her statement as to the arrangement to commit the crime, would have been corroborating evidence. So too, proof by other witnesses of their intimacy while it corresponded with her testimony as to that fact, did not corroborate her on the material point in issue. It seems to follow that proof of the simple fact, that the defendant gave her money, which it appeared, he was accustomed to do, and especially of the more remote and irrelevant circumstance, that she paid that or similar money to third persons just as she testified she did, was not corroborating evidence that he employed her to commit the felony. Perhaps it was admissible to show that he in fact gave her money; but considered in connection with the additional fact that he was accustomed so to do, it rested on the extreme verge of propriety.

The remaining evidence introduced with a view to corroboration, that she arranged to meet a third person at Quaker street to close the arrangement for the place, and that she in fact paid similar money to that, she said she received from the defendant to third persons was clearly remote and irrelevant to the issue. This evidence was improperly admitted; and it was of a character, as the case stood before the jury, likely to affect their verdict. Its admission was therefore error.

It is also insisted that evidence bearing on the question

of the credibily of Mrs. Bronk was improperly excluded. The defense sought to impeach the witness by evidence of general character; six witnesses were introduced, each of whom swore that her character was bad; that her ruputation for truth was bad, and had been for a period extending back almost to her childhood; that they would not believe her on oath.

Counter evidence was given on the part of the people by five witnesses, who testified that they were acquainted with her character, and that they would prior to the fire and to her arrest have believed her on oath.

On cross-examination of two of these witnesses, the defendant's counsel sought to show that her character at the time she testifid was bad, and that they would not then believe her on oath. This evidence was objected to: 1st. On the ground that the inquiry should be limited to what her character was before the fire: 2d. That the number of impeaching witnesses had been limited by the court to six on a side, and that the defendant had exhausted his full compliment. The objection was sustained and the evidence excluded. If excluded on the first ground of objection it was manifest error. The jury were to determine the credibility of the witness at the time she testified. The question for them was, whether she was then at the time she spoke, a truthful and reliable witness. It was competent for the district attorney to fix the limit of his inquiry at some prior period, but the point to be reached by the proof, was for all that, her standing for truth and veracity at the time she testified. As was said in *Willard* agt. *Goodnough*, (30 *Vt.* 397,) it is practicably impossible to limit the scope of the answer to any particular period. The testimony when given under such a question, will bear more or less strongly upon the present character of the impeached witness, according as it fixes the existence of the bad charac-ter at a more or less recent point of time. * * * * * The present character is the point in issue. What the character

formerly had been is relevant only, as it blends with the continious web of life and tinges its present texture. (*See also Rucker* agt. *Beaty*, 3 *Ind.*, 70; *Rogers* agt. *Lewis*, 19 *Ind.*, 400 ; *Arnold* agt. *Cobb*, 21 *Ind.*, 493).

So it might be argued that if Mrs. Bronk was a person whose statements upon oath were to be credited before the commission of the felony, she was still under the circumstances of the case at the time of testifying, also to be credited. *In Sleeper* agt *Van Middlesworth*, (4 *Denio* 431), Judge BEARDSLEY remarked that the law indulged a strong presumption against any sudden change in the moral as well as in the mental and social condition of man—that a state of mind once proved to exist, is presumed to remain unchanged till the contrary appears. Now the district attorney proved Mrs. Bronk to be a credible person in the opinion of the witnesses, prior to the fire and rested, as well, he might according to Judge BEARDSLEY, on the presumption which such opinion supported. The defendant then had a right to meet and overthrow this presumption by inquiring of the witnesses, on cross-examitation, whether they would then believe her upon oath. If they would not, the argument and inference in favor of her credibility based on her former standing in community, were effectually overcome. And if they would still deem her credible, considering her present general character, and her sworn admission of guilt, such fact was important with a view to test the value of their own opinion favorable to Mrs. Bronks integrity as a witness given on their direct examination. It is plain I think, that this was a proper subject of inquiry on cross-examination of witnesses, who had spoken to her credibility at a period long anterior to the trial.

But it is to be presumed that the evidence was excluded on the ground of objection, secondly stated, to wit, that the number of impeaching witnesses had been limited to six on a side. It was undoubtedly competent for the court to

limit the number of witnesses to be examined on the question of general character. But did such limitation as to number also, limit the right of cross-examination? Palpably it did not, nor should it have that effect—otherwise the test of cross-examination would be rendered valuless. The ruling as to numbers went no further than this, that each party might put six witnesses on the stand to speak to the credibility of the person sought to be impeached. But when on the stand, the right of examination and cross-examination should not be infringed.

Give the ruling the effect claimed for it, and it would deprive the party against whom the witness was called, of a substantial right, a right to test the capacity, integrity and means of knowledge possessed by the witness by a cross-examination. The defendant was, therefore, entitled to the same right of cross-examination as if no ruling had been made in regard to the number of witnesses on the subject of impeachment, otherwise the limitation would be itself improper, inasmuch as it would deprive the party against whom the witness was called, of a right always deemed of the utmost consequence, a right of full and searching cross-examination. In my judgment, the cross-examination was here improperly abridged. In conclusion it may be remarked that when a case is sought to be established by the testimony of an accomplice who stands in the main, if not wholly uncorroborated, it is due to the party accused and to the cause of justice that none but evidence clearly admissible under the severest test should be allowed, and that none in the least bearing on the question of credibility, and admissible should be excluded. Mr. Justice BEARDSLEY well remarked in *The People* agt. *White*, (14 *Wend.*, 114,) that "when the case is one of delicacy and importance and the evidence is nicely balanced, and the scale liable to be affected by slight circumstances, the court will be exceedingly vigilant in preventing any extraneous or irrelevant matter from being brought before

People agt. Haynes.

the jury;" the same may also be said in regard to the rejection of evidence, which it was the right of the party to lay before the jury for their consideration. Now in this case, the only direct evidence of guilt was given by a confederate in the crime. The witness was a conceded felon. The evidence on which the conviction was predicated, came from a source admittedly corrupt. The case before the jury was therefore, one of extreme delicacy, and the accused had the right to insist that it should be considered by them without possible error in the admission or rejection of evidence, tested by the strictest rules. The charge of the learned judge who presided at the trial was eminently fair and impartial. The law of the case was clearly and explicitly stated, and his comments on the evidence were unexceptionable. In this regard, the defendant has no cause for complaint. But for the reason above suggested, the verdict must be set aside, and a new trial ordered.