LOUIS WILLARD v. ROSWELL GOODENOUGH.

*Impeachment of Witnesses.   Evidence.*

It is not proper for counsel to inquire, upon the cross-examination of one witness, who has testified to the bad character of another for truth, whether he would believe the latter on oath.

It is not competent, for the purpose of impeaching a witness, to inquire of others, as a distinct proposition, independent of their opinion of his *present* character for truth, what his reputation in that respect was at some former time.

The question at issue was whether an indorsement upon a note introduced on trial, was for *twenty-five,* or *seventy-five* dollars, *Held,* that it was not competent to show by a person, not an *expert,* who took an inventory of the note in question, with others, that on that occasion he called and read the indorsement *twenty-five* dollars.

If a witness at one trial of a cause gives testimony without objection from either party, which includes irrelevant and incompetent matter; it is not proper, at another trial of the same cause after his death, for the court to read their minutes of his testimony to the jury, without instructing them what portion thereof is irrelevant and incompetent, and that so much should not be considered by them.

GENERAL ASSUMPSIT.   Plea, the general issue, and trial by jury, at the April Term, 1857,— UNDERWOOD, J., presiding.

The plaintiff read in evidence, on trial, a promissory note, dated April 20, 1852, for one hundred and twenty-five dollars, signed by the defendant, and payable to the plaintiff on demand with interest, with an indorsement thereon, under the date of May 25, 1852. The only question in controversy before the jury, was whether the money paid by the defendant on the note at the time of the indorsement was twenty-five or seventy-five dollars ; the plaintiff claiming that the indorsement read *twenty-five,* and the defendant that it read seventy-five dollars. The plaintiff gave evidence tending to prove that the defendant at the time the indorsement was made, which was in the defendant's hand writing, paid, in fact, only twenty-five dollars, and rested his case.

The defendant gave evidence tending to show that he paid seventy-five dollars upon the note on the date of the indorsement. The defendant also introduced Asa P. Goodenough, as a witness

who testified that the plaintiff told him that the defendant paid him seventy-five dollars upon the note at the time of the indorsement. This witness had previously given a deposition in the case, which the plaintiff's counsel had in their possession. On cross-examination, the plaintiff's counsel inquired of the witness if he did not state certain things in his deposition, naming them. The defendant objected to such inquiries, unless the plaintiff's counsel first handed the witness the deposition, that he might see it. But the court overruled this objection and allowed the inquiries to be put, to which the defendant excepted.

The plaintiff gave further evidence tending to show that at the time when the payment in question was made, the dollar mark ($) and the figures (75) were not annexed to the indorsement by the defendant, but that the defendant added them without the plaintiff's consent, on a subsequent occasion, when the plaintiff presented the note for payment, and when the defendant took the note for the purpose of casting up the amount due upon it. The plaintiff also introduced evidence tending to show that after the indorsement, and before the presentation of the note for payment above referred to, he left this note, with others, in the hands of one Prouty, for safe keeping, as the plaintiff was going west, and that on that occasion an inventory was taken of his notes, showing the amount due thereon, exclusive of interest. Prouty, being introduced by the plaintiff as a witness, testified that he, at that time, examined this note and the indorsement, and that the dollar mark ($) and the figures (75) were not then in the indorsement. The plaintiff also proposed to show by Prouty, that in making the inventory, he, Prouty, called and read the indorsement as twenty-five dollars, and called the amount due on the note in the inventory, as one hundred dollars. To the admission of Prouty to testify as proposed by the plaintiff, the defendant objected, but the court overruled the objection, and Prouty so testified, and the defendant excepted.

The plaintiff called on one Steen, among others, to impeach the general reputation of the defendant, who had testified in the case, for truth and veracity, and on cross-examination, the defendant's counsel inquired of Steen " if he would believe the defendant on oath?" To this question the plaintiff objected, and the court ruled that it was not proper, to which the defendant excepted.

Willard *v.* Goodenough.

It appeared that the defendant went through bankruptcy in 1842, and the plaintiff proposed to show that at and about that time, the defendant's character for truth was bad. To this testimony the defendant objected, but the court admitted it, to which the defendant excepted.

Levi Goodenough was a witness in this case at a former trial, since which time he had died. The plaintiff at this trial proposed that the court should read to the jury their minutes of Goodenough's testimony on that occasion, the whole of which was then given without any objection by the defendant. The defendant objected to the court's reading to the jury certain portions of Goodenough's testimony contained in their minutes, because they were entirely irrelevant to the case and not competent testimony; but the court read the whole of their minutes of Goodenough's testimony, both on the direct and the cross-examination, to which the defendant excepted. But the court charged the jury that those portions of the testimony, above referred to, would have probably been excluded had they been objected to at the former trial when the testimony was given; but that as the testimony was then given without objection, the jury must take it now as it was then given, but that it would be for them to say whether they would give any weight to that part of it which the defendant then objected to ; and that it did not seem to the court that any thing satisfactory could be made of it; that it was probably said by the witness without the notice of the defendant's counsel at the time, and that probably no reliance was then placed upon it by either party.

The court charged the jury in other respects to the satisfaction of both parties, and the jury returned a verdict for the plaintiff, treating the indorsement as *twenty-five* and not *seventy-five* dollars.

*Bradley & Kellogg*, for the defendant.

*E. Kirkland*, for the plaintiff.

The opinion of the court was delivered by

BARRETT, J. I. The first question raised by the bill of exceptions and discussed by counsel, being in relation to the manner of cross-examining Asa P. Goodenough, we pass, without expressing any opinion upon it.

II. The plaintiff called Steen, as a witness, to impeach the character of the defendant for truth. On cross-examination, the defendant's counsel asked him " if he would believe the defendant on oath." The court, on objection, ruled out the question.

Under the rule, as well settled in this state, such a question could not be put on the *direct* examination. It is claimed that that rule does not apply to the cross-examination, so as to exclude the question.

We are not aware of any formal decision of the supreme court upon the subject, as it is now presented. Yet we are quite sure that the understanding and usage of the courts and bar of the state have not recognized the distinction here taken, between the direct and cross-examination. There may be reasons favoring the distinction and justifying this mode of cross-examination. These reasons have been well presented in the argument of this case. But we find it difficult to place the subject, when the proposed question is put on the cross-examination, on any ground of principle that would not equally justify its being put on the direct examination.

Under the rule and practice, as we understand them, the cross-examination may extend to every matter of fact within the witness' knowledge, bearing on the *fact* of the bad character to which he has testified; and thus the proper consideration and weight may be given by the jury to the whole testimony of the impeaching witness. After such an examination of a witness has been made, for him to superadd that he would or would not, believe the impeached witness on oath, must be, in effect, merely giving his own opinion to the jury, as to the net result of his own impeaching testimony. Though such an opinion might evince his personal estimate of the credibility of the witness in question, and how much detractive force he gave to the defective character, still, we see no good reason for permitting that opinion to be given in evidence on cross-examination, which would not operate with nearly equal force for permitting it on the direct.

If we were now called on to institute a rule on this subject, instead of administering and applying an old one, we might not have much difficulty in copying the rule of the English, and some of the American courts. But, at present, we are not disposed to

engraft a new feature into the law of this subject, as always understood and generally practiced by the bench and bar of this state. On this point we think there was no error in the decision of the county court.

III. As to the proposal by the plaintiff, to show that, at and about the time of the defendant's going through bankruptcy, (in 1842) his character for truth was bad, we think, as a distinct propposition, disconnected with the examination of the witness, as to *present* character, it was improper. It is well settled that the question should be, " what *is* the 'general character or reputation for truth ?" Under a question thus put, it is quite common for the witness under examination, in giving his knowledge of the character in question, to state what was the character of the impeached witness at particular prior periods. It is practically impossible to limit the scope of the answer to any particular period.

The testimony, when given under such a question, will bear more or less strongly upon the *present* character of the impeached witness, according as it fixes the existence of the bad character at a more or less recent point of time.

It may be proper, under some circumstances, as in case an impeaching witness should answer the question thus put, that he does not know what the *present* character is, or that he has not heard it talked about *recently*, or in some other way implying his knowledge of former bad character, to inquire of him as to his knowledge of it at former periods. But we think this should be done only as following upon such a kind of answer to the questions put as above indicated. The *present* character is the point in issue. What the character had formerly been is relevant only as it blends with the continuous web of life and tinges its present texture.

It could not, with any show of reason, or authority, be held, that under the law of evidence permitting a witness' general character to be impeached, it would be proper to make the issue, as to what his character was at a given period, prior to the time of his being used as a witness in the case on trial. If not, then it is equally clear that, as a distinct and independent proposition, it would be improper to offer evidence as to what his character was at such prior period.

In the present case, it is somewhat difficult to determine from the bill of exceptions, in what connexion with, and relation to the other impeaching evidence, or in what form the proposal under consideration was made. We therefore pass this point with the foregoing remarks indicating the views of the court on this subject.

IV. The testimony of Prouty, " that he called and read the indorsement twenty-five dollars," and called the amount due in the inventory one hundred dollars, seems to us to be merely testifying the witness' opinion as to the questionable indorsement. He was not an *expert*, and therefore does not fall within the rule allowing opinion to be given in evidence. Whether the word was *twenty-*five or *seventy-*five, was the question in issue, and, in the absence of the testimony of *experts*, it was to be determined by the jury from an inspection of the paper, with the aid of the other evidence tending to show how much in fact the defendant paid at the time of the indorsement, and designed to be covered by it. The principle governing this point was fully recognized and reaffirmed in the case of *Frazer* v. *Tupper*, decided, on full argument at the last term of the supreme court in Windsor county.*

We think the court erred in admitting this testimony.

V. As to the reading of that part of the minutes of the testimony of Levi Goodenough, which was objected to by the defendant, we should have found no difficulty, if the court had given proper instructions to the jury respecting it.

The fact that the witness was dead, could not operate to render that part of his testimony any more relevant than it would have been if he had been living and present on the stand. The fact that he gave that testimony on a former trial without objection, did not preclude the defendant from objecting to it when the same was offered on a subsequent trial. It does not fall within the principle of *Glass* v. *Root*, 5 Vt. 172, or of the other cases in which the objection of interest in the witness, or the rule requiring written instead of parol evidence was waived. If it were held to be proper that the whole of the minutes should be read, still it was the duty of the court to instruct the jury that that part of the testimony was irrelevant, and not to be considered by them. Instead of

*See 29 Vt. 409.

doing so, the court left it for the jury "to say whether they would give any weight to that part of it," with some very good advice as to the light in which they ought to view it. In this we think the court erred.

Judgment is reversed and the case is remanded to the county court for a new trial.