# In re Carleton N. Monaghan

[167 A.2d 81]

November Term, 1960

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed January 3, 1961

*Carleton N. Monaghan, pro se.*

*Board of Bar Examiners, pro se.*

**Shangraw, J.** This is a petition addressed to this Court seeking an order directing that the Board of Bar Examiners permit the petitioner to take the 1960 bar examinations of this state.

The petitioner, a resident of St. Albans, Vermont, is an applicant for admission as an attorney of the courts of this state. Having complied with the required period of study, on May 25, 1959 he filed a

petition for admission to the bar, by examination. Following an investigation made by the Board of Bar Examiners, on August 18, 1959 he was denied the privilege of taking the bar examinations to be held during October 1959. The reason for this refusal was that the board was unable to favorably certify as to the moral character and fitness for admission of the applicant. A petition to reconsider its action was filed with the board by Mr. Monaghan and again the board declined to permit the applicant to take the bar examinations. During July 1960 the applicant requested a reinstatement of his 1959 application for admission. A further investigation was made by the board and it again refused the applicant the privilege of taking the examinations, giving as reasons therefor that it was unable to favorably certify as to the applicant's moral character and fitness for admission as required by the rules of this Court.

The petitioner then filed with this Court a petition seeking a mandate to compel the Board of Bar Examiners to permit him to take the 1960 bar examinations to be given by the board during the month of October. The Court issued its order September 20, 1960 directing that the board submit a report on the nature and result of its investigation of the petitioner pursuant to Supreme Court Rule 25 (2). This report was filed October 4, 1960. At the time a hearing was had before this Court on this petition and report the petitioner appeared *pro se.* All members of the board also appeared, excepting one.

4 V.S.A. §841 provides that "Justices of the supreme court shall make, adopt and publish and may alter or amend rules regulating the admission of attorneys to the practice of law before the courts of this state." The following section, 4 V.S.A. §842 provides for a board of bar examiners consisting of six persons, to be appointed by this Court.

By virtue of 4 V.S.A. §841 this court has promulgated rules relating to the admission of attorneys to practice law in this state. Supreme Court Rules, sections 23-27, inclusive. The rules prescribe certain educational requirements, period of study, subjects to be examined upon, etc., which examination of applicants shall be had each year during the week preceding the opening of the November General Term of this court. Rule I in part provides that each applicant for admission must be "of good moral character." In determining each applicant's fitness for admission Rule 25, section 2 provides:

"The board of examiners shall satisfy themselves that each applicant has complied with the rules entitling him to take the examination and shall make a thorough investigation respecting the applicant's moral character and fitness for admission and report to the court the nature and result of such investigation. * * *"

The following is a summary of the report made by the Board of Bar Examiners to this Court. Upon receipt of Mr. Monaghan's application for admission to the bar, by examination, an investigation was made by a member of the board and a report made at its meeting on July 17, 1959. A routine check disclosed several infractions of the law by the applicant. This information, together with conversations had with attorneys interviewed, convinced the board that a special investigation of a more detailed nature should be made. This was done by the same member of the board, who, at a meeting of the board held on August 18, 1959, disclosed that the applicant had been summoned into the Franklin Municipal Court charged with the following offenses alleged to have taken place on March 15, 1952. (1) intoxication, (2) assaulting and beating his wife, and (3) intentionally pointing a firearm at his son. The first and third charges were nol prossed. The applicant pleaded guilty to the second offense and was sentenced to not less than one nor more than two years in the House of Correction, and pay a fine of $25.00 and costs. The House of Correction sentence was suspended and the respondent placed on probation.

On January 31, 1955 the applicant was arraigned in Franklin Municipal Court for an alleged violation of the law of the road, resulting in property damage, to which charge a plea of nolo was entered and he was fined $25.00 and costs.

The applicant was again before the Franklin Municipal Court charged with the following as having taken place on July 13, 1959; (1) intoxication; (2) driving while intoxicated; and (3) careless and negligent driving. Following the accident the applicant was requested to take a blood test. He refused and his license was suspended under the statute, 23 V.S.A. §1191. The applicant was arrested at the scene of the accident and spent one or two nights in the Franklin County Jail. He subsequently pleaded either nolo or guilty to careless and negligent driving and was fined $100 and costs. The other charges were nol prossed.

As a part of the investigative process a superior judge and three prominent lawyers in St. Albans were interviewed by a member of the board, all of whom knew the applicant and his history. None of these interviewed would give an unqualified endorsement of the applicant's moral character and fitness. Some of them expressed strong convictions against his admission on these grounds.

The applicant was advised that the board was unable to certify his moral character and fitness and invited him to meet the board on September 10, 1959. The applicant appeared and submitted himself to examination. The board also heard his wife in support of her husband's application. The records in the Franklin Municipal Court were not disputed, nor the integrity of any of the persons interviewed.

At his request the applicant was granted permission to file a petition for reconsideration. The board again met on September 18, 1959 and considered the applicant's application the fourth time, including his petition for reconsideration. The board voted that it could not certify that the applicant had the moral character and fitness for admission required by the rules, and therefore refused to permit him to take the examinations. Notice of its action was given to the applicant.

During the month of October 1959 the chairman of the board received several letters from various people, apparently written at the request of the applicant. All but one of the letters were favorable to the applicant regarding his character. One letter favorable to the applicant was withdrawn by its author. In the fall of 1959 two people, separately and at different times, advised the chairman that they had been requested by the applicant to write letters recommending his moral character and fitness for admission but were unable to do so.

On July 5, 1960 the applicant filed a request for reinstatement of his 1959 petition for admission, and, although not in conformity with the rules and not filed within the time limited by Rule 25 (1), the board agreed to treat the filing of the same as timely. The 1960 petition of this applicant was considered by the board at its meeting on July 15, 1960. At that meeting, the board reviewed all of the evidence, including all of the letters received by the chairman in October 1959, and voted unanimously that it was still unable to certify the moral character and fitness of the applicant for admission as

required by the rules. The applicant was so notified July 18, 1960 and his fee of $10.00 was returned.

The chairman of the board conferred with the applicant during the third week of July 1960, advising him of the adverse action of the board and suggested the possibility of a judicial review. The chairman urged the applicant to file such a petition, if he cared to do so, at least by the first of August 1960, in order that the matter might be brought before the Supreme Court in time for its consideration at the September Term. The applicant's petition states the reasons why this was not done, without reflecting any fault on the part of the board, or the applicant.

We have reviewed the report in detail, thereby indicating the time devoted to the application by the board, the extent and nature of its investigation, the opportunity afforded the applicant to present evidence in his favor, and generally the course of events leading up to the petition now considered. It goes without saying that this matter is of utmost importance to the petitioner, as well as to the public generally, and we consider it in that light.

The petitioner in general claims that the action of the board in denying his request for admission, by examination, was arbitrary, oppressive, unconstitutional, unreasonable, erroneous, and seeks relief under Article Four of Chapter One of the Constitution of the State of Vermont. This article reads:

"Every person within the state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property or character; he ought to obtain right and justice, freely, and without being obliged to purchase it; completely and without any denial; promptly and without delay, comformably to the laws."

The petitioner in his petition specially assigns the following specifications of error. He first claims that while his character was in issue the board failed to apply to this issue the settled legal rules, urging that isolated or individual opinions are not to be given conclusive weight. The petitioner claims that the board ignored the letters of recommendation or testimonials received in his behalf. As evidence of good character there was recited in the petition his religious and fraternal affiliations, the fact that he received a commission

in the U. S. Army, and among other things that he had been scoutmaster of several boy scout troups. He also stated that there had been committed to his care probationers and parolees by the State of New York Department of Correction, and that he has been repeatedly elected to a position of responsibility of a fiduciary nature in an international labor union. He claims that the board acted arbitrarily in denying him the privilege of taking the examinations.

Secondly, he claims that the board did not conduct a "thorough investigation." He urges that initially he was entitled to the benefit of the presumption that he is morally fitted for the office as an attorney of the courts of this state, and but little evidence is required in support of such presumption, citing *Re Morrison* (1922) 45 S.D. 123, 186 N.W. 556. It is claimed that the letters testimonial, if considered, would have outweighed conclusively any adverse matter, and that, had the board properly considered the petitioner's evidence, it could not have, without an abuse of discretion, ruled against him. He further urges that by its failure to make inquiry among employees of the Central Vermont Railway, by which he has been employed about 25 years, a "thorough investigation" was not made by the board.

Next, the petitioner claims that the board gave undue emphasis to the court records which were nol prossed and never tried. It is claimed that the fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct, and whatever probative force the arrest may have is normally dissipated when the case is nol prossed, citing *Schware* v. *Bd. Bar Ex. New Mexico,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796, 64 A.L.R.2d 288. Further, it is contended that the record of convictions did not involve moral turpitude.

Lastly, he argues that the board's action invaded the rights given him under the Fourteenth Amendment to the United States Constitution by reason of the damage done to his character, and his rights, again urging that a state cannot exclude a person from the practice of law when there is no basis for a finding that he fails to meet the standards, or when the action is invidiously discriminatory, citing the Schware case, *supra.* In substance, the petitioner claims that he has been deprived of the privilege of taking the bar examinations for no valid reason.

■ The law-making power of this state has placed the authority and responsibility upon this Court to determine who are qualified to become its officers as attorneys. The privilege of practicing law is not a vested or a constitutional right. *In re Haddad,* 106 Vt. 322, 325, 173 A. 103. It is a privilege burdened with the condition that the applicant is a fit and safe person to exercise it. As stated in *In re Durant,* 80 Conn. 140, 67 A. 497, 500, 501, 10 Ann. Cas. 539, cited in *In re Haddad, supra,* at pages 324 and 325, "An attorney at law is an officer of court, exercising a privilege or franchise to the enjoyment of which he has been admitted, not as a matter of right, but upon proof of fitness * * *" It is in the nature of a franchise from the state conferred only for merit. It must be earned by study and good conduct. *In re Morse,* 98 Vt. 85, 126 A. 550, 36 A.L.R. 527.

■ In addition to the educational requirements, it is a prerequisite for admission to the bar that an applicant be of good moral character. By asking admission, the applicant puts his own good moral character directly in issue, and assumes the burden of proof as to that issue. *Rosencranz* v. *Tidrington,* 193 Ind. 472, 141 N.E. 58, 28 A.L.R. 1136. *Ex parte Walls,* 73 Ind. 95, 107-109. *In re Wells,* 174 Cal. 467, 163 P. 657; *In re Weinstein,* 150 Ore. 1, 42 P.2d 744.

The necessity of a high moral character for honesty and integrity required of candidates for admission to the bar is well expressed in *Re Law Examination of 1926,* 191 Wis. 359, 210 N.W. 710: "It can also be truthfully said that there exists nowhere greater temptations to deviate from the straight and narrow path than in the multiplicity of circumstances that arise in the practice of the profession. For these reasons the wisdom of requiring an applicant for admission to the bar to possess a high moral standard therefore becomes clearly apparent, and the board of bar examiners, as an arm of the court, is required to cause a minute examination to be made of the moral standard of each candidate for admission to practice. * * *" This is also our view.

■■ Recommendations of bar examiners will not be reviewed or set aside unless there is a strong showing of abuse of discretion, arbitrary action, fraud, corruption or oppression upon the part of the examiners. There must be a convincing showing that such adverse recommendation is not based upon sound premises and valid reasons.

*Spears* v. *State·Bar,* 211 Cal. 183, 294 P. 697, 72 A.L.R. 923. The discretion exercised by a board on character and fitness will not ordinarily be reviewed. *Re Anastaplo,* 3 Ill.2d 471, 121 N.E.2d 826. Such review will only be had where there has been an arbitrary refusal to hear and consider evidence which may be presented, or a wilful refusal of a certificate manifestly not based upon an investigation and consideration of the applicant's qualifications. *Re Frank* (1920) 293 Ill. 263, 127 N.E. 640. No such showing is made by this petition. It appears only that the board, after repeated examinations of the petitioner, and of such evidence as was produced, was not satisfied that he possessed such character and fitness as in the opinion of the board justified his admission to practice.

The report clearly indicates that all evidence, favorable and unfavorable to the applicant, was received and considered. The investigation was sufficiently thorough to fully apprise the board of the character of the applicant. The action of the board in declining to permit the petitioner to take the examinations was committed to the judgment and discretion of the board after personal interviews with the applicant, an examination of the evidence, and an investigation of his previous history. See Annotation, 64 A.L.R.2d pages 303 to 331 inclusive.

The court records of conviction do not disclose a great depravity of character; however, it must be admitted that they do indicate in the petitioner the want of that integrity which the law demands of those who are allowed the privilege of practicing law. The report shows an absence of that high character which the state intends shall be possessed of those who desire to practice as attorneys in the courts of this state. The practice of law in this state is not a profession open to all who wish to engage in it, unless qualified by legal training and moral fitness. It is not a natural, inherent, or vested right, or one guaranteed by the Constitution, either state or federal. It is a personal right or privilege limited to persons of good moral character, with special qualifications duly ascertained and certified. 5 Am. Jur, Attorneys at Law, §14, page 270, and cases cited.

The petitioner alleges that he has been denied an opportunity to qualify for the practice of law contrary to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. As stated in *Schware* v. *Board of Bar Examiners, supra,* at pages 238

and 239, "A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." This simply means that a person cannot be prevented from practicing law except for valid reasons. A denial for racial, religious, or political reasons would lack validity. As again stated in *Schware, supra,* at page 239, "A State can require high standards of qualifications, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." Citing *Douglas* v. *Noble,* 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590; *Cummings* v. *Missouri,* 4 Wall 277, 319-320, 18 L.Ed. 356; Cf. *Nebbia* v. *New York,* 291 U.S. 502, 54 S. Ct. 505, 78 L.Ed. 940. Obviously a state cannot exclude an applicant when there is no basis for its finding that he fails to meet the standards, or when its action is invidiously discriminatory. Under the facts in this case we find no invasion of the petitioner's rights guaranteed to him under the state or federal Constitution.

The decision of the Board of Bar Examiners, substantiated by its report, and our own independent study of the record, satisfies this Court that the refusal of the board to permit the applicant to take the examinations is based upon sound premises and valid grounds. His petition for an order permitting him to take the 1960 examinations, notwithstanding the refusal of the board to favorably certify as to his moral character and fitness, is therefore denied.

*The petition is dismissed.*