### In re Carleton N. Monaghan
[ 222 A.2d 665 ]

June Term, 1966

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed August 15, 1966

Motion for Reconsideration Denied September 13, 1966

*Wick, Dinse & Allen,* and *Carleton N. Monaghan pro se,* for petitioner.

*Robert K. Bing* for the Bench and Bar.

**Keyser, J.** The petitioner, a man 56 years old, by his application to this court seeks the right to take the examination for admission to the Vermont Bar to be given to qualified applicants in September 1966. This proceeding is the culmination of a series of applications filed annually with the board of bar examiners by the petitioner beginning in 1959.

The rules promulgated by this court relating to admission of an attorney to practice law in this state under 4 V.S.A. §841 provide that each applicant for admission shall be of "good moral character." Rule 23, ¶1. A board of bar examiners consisting of six persons (lawyers), appointed by this court under 4 V.S.A. §842, investigate the applicant's qualification and fitness for admission. Rule 25, ¶2. This section reads in part as follows:

"The board of examiners shall satisfy themselves that each applicant has complied with the rules entitling him to take the examination and shall make a thorough investigation respecting the applicant's moral character and fitness for admission and report to the court the nature and result of such investigation. . . ."

The board of examiners has denied all previous applications of the petitioner to take the bar examinations for the reason that the members were unable to favorably certify the applicant's good moral character and fitness for admission. The basis of this action by the board was the applicant's record of conviction for several violations of the law.

The first offense took place on March 15, 1952 as a result of which the applicant was summoned to Franklin Municipal Court and charged with (1) intoxication, (2) assaulting and beating his wife, and (3) intentionally pointing a firearm at his son. The applicant pleaded guilty to breach of the peace and was given a suspended sentence to the House of Correction for not less than one nor more than two years and ordered to pay a fine of $25.00 and costs. The second offense was a violation of the law of the road in January 1955 to which the applicant pleaded nolo. The third offense was in July 1959 when the applicant was again before the Franklin Municipal Court charged with driving while intoxicated and careless and negligent driving. The applicant refused to take a blood test and as a result his license was

suspended under the statute, 23 V.S.A. §1191. The applicant was arrested at the scene of the accident and spent one or two nights in the Franklin County Jail. Subsequently he pleaded nolo to careless and negligent driving and was fined. The other charges were nolle prossed.

The denial of the board for the petitioner to take the 1960 examinations was before this court for review, *In re Monaghan,* 122 Vt. 199, 167 A.2d 81. At that time (1960), in sustaining the action of the board, we said: "The court records of conviction do not disclose a great depravity of character; however, it must be admitted that they do indicate in the petitioner the want of that integrity which the law demands of those who are allowed the privilege of practicing law. The report (of the board to the court) shows an absence of that high character which the state intends shall be possessed of those who desire to practice as attorneys in the courts of this state."

Until now the applicant has never had a formal hearing under due process on the issue of his good moral character and fitness. However, in July 1960, the board chairman did suggest to him the possibility of a judicial review. The inquiry, or investigation, conducted by the board, or by one or more of its members, generally is informal and for the most part is based on ex parte statements. It is the result of this investigation of the applicant's moral character and fitness for admission that has afforded the basis for the action of the board. The applicant claims he is qualified to take the upcoming examination in September and requested a hearing to determine this fact.

█ If the privilege of taking the bar examinations is to be withheld on the lack of good character and fitness, procedural due process requires that the applicant be given an opportunity for a hearing on the charges and statements made against him. He must be afforded an opportunity to be confronted with, and to cross-examine, witnesses who supply information adverse to him. *Willner* v. *Committee on Character and Fitness,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed. 2d 224, 2 A.L.R. 3d 1254, 1259, 1260; Anno. 2 A.L.R. 3d 1266. Such hearing may not be automatically required in every case but rather it depends upon the circumstances and the source and character of any derogatory matter. Id. at A.L.R. 3d 1266.

█ Because of the past history of this matter and to satisfy the requirements of due process and a fair hearing, this court, after conference with counsel for the petitioner and the state, adopted the

recommendation of the majority of the board of bar examiners that a commissioner be appointed to take testimony on the question of the applicant's character and to make his report to this court. The board of bar examiners which serves as an "arm" to this court, is, except in the rarest of cases, as here, the only proper body to hold such a hearing.

In this case the assigned responsibilities of the board for the proceedings were completely carried out, and came to an end with the appointment of a commissioner.

■ Commissioners appointed by the court are but agents and officers of the court to investigate the subject matter submitted to them, and the court is not bound by their action. *Gray* v. *Middleton,* 56 Vt. 53, 57.

The function of the commissioner is to report the facts which he has done by making a full and thorough report. The facts reported by the commissioner do not have the same standing as findings of fact made by a master or auditor. It is the responsibility of this court to take appropriate action on those facts we find are supported by competent and material evidence and then arrive at a decision.

■ It is this court, after receiving the report and recommendation of the board, or as in this case, the findings of the commissioner, that ultimately must be convinced of the applicant's good moral character and fitness and takes the final and decisive action. *Heiberger* v. *Clark,* 148 Conn. 177, 169 A.2d 652, 655. There has been no question made in the past, or now, that the applicant is not otherwise qualified to take the bar examinations.

■ The sole question in issue is the petitioner's *present* good moral character and general fitness. As such it is a matter of substantive fact and law. Here, character is not collateral or remote; it is the central substantive concern of this case. The rules of the admission and treatment of evidence of character have been generally formulated with respect to the issue of testimonial credibility. In such a case the issue is not governed by the same considerations as apply here since we are concerned with facts, not credibility. On this issue the applicant assumes the burden of proof. *In re Monaghan, supra,* at p. 205.

■ Therefore, probing the knowledge of a witness with respect to character-reputation testimony is not collateral but central. Under the usual rule it is proper to inquire of the impeaching witness as to

the source of his information. He may be asked to name the specific persons who have spoken against the party sought to be impeached and as to what facts they specified. *Wigmore on·Evidence,* Third Edition §1111B, citing among other cases, *Willard* v. *Goodenough,* 30 Vt. 393, 396, where the court said: "(T)he cross-examination may extend to every matter of fact within the witness' knowledge bearing on the fact of the bad character to which he has testified. . . ." Being permitted in the ordinary testimonial situation, it may be pursued as of right in the situation presented here.

Where any fact or evidence adverse to an applicant is uncovered, he cannot be denied sufficient knowledge of what it is and an opportunity to rebut or explain it. *Application of Warren,* 149 Conn. 266, 178 A.2d 528.

In the case of *In re Crum,* 103 Or. 296, 204 P. 948, the court said this:

"In a proceeding of this kind, the applicant is entitled to confront the witnesses, to subject them to cross-examination, and to invoke the protection of the tried, wise and well-settled rules of evidence. *In re Eldridge,* 82 N.Y. 161, 37 Am. Rep. 558."

"It has been written that—

"It is essential to the administration of justice according to law, that the recognized rules of evidence should be observed in this class of cases as well as in all others.' *People* v. *Amos,* 246 Ill. 299, 92 N.E. 857, 138 Am. St. Rep. 239."

And again in that case the court said, "Proceedings had for the admission and disbarment of attorneys-at-law are alike judicial."

The record indicates that the question to be resolved is a complex and difficult one. Needless to say the matter is of vital importance to the petitioner. Likewise, we have a profound interest in protecting the courts and the public from persons who lack the essential qualifications of moral character and fitness.

◼ Good character in the members of the bar is essential to the preservation of the integrity of the courts. The duty and power of the court to guard its portals against intrusion by men and women who are mentally and morally dishonest, unfit because of bad character, evidenced by their course of conduct, to participate in the administrative law, would seem to be unquestioned in the matter of

preservation of judicial dignity and integrity. *Gould* v. *State*, 99 Fla. 662, 127 So. 309, 69 A.L.R. 699; *Heiberger* v. *Clark, supra,* p. 655 of 169 A.2d.

The report of the commissioner shows two other violations of the law by the applicant in addition to the ones considered by this court in 1960, mentioned *supra*. The first was a conviction in 1958 for a violation of the law of the road; the second was a conviction in June 1962 on a plea of nolo to the charge of intoxication.

The report further shows, as did the prior case, that in June 1951, the applicant's wife filed a libel for divorce on the grounds of intolerable severity but this action was discontinued in March 1952. On the occasion of his arrest on the breach of peace charge on March 15, 1952, police officers were called to the home by Mrs. Monaghan who stated that her husband had broken in a door and had slapped her around and then he went upstairs to obtain a gun. The officers went upstairs and the petitioner was pointing a gun at his son who in turn had a gun. The petitioner was arrested and his case was disposed of as above stated.

When the applicant was arrested on May 31, 1962, (the report erroneously states July 13, 1959), he gave the police "a hard time." The petitioner was a passenger in his own car which the police had stopped to check. In the opinion the the police officers he was fairly intoxicated. He was uncooperative throughout the entire incident and showed hostility to the police officers as a result of which he was arrested and charged with intoxication. He pleaded nolo to this charge on June 20 and was fined $5.00 and costs.

The commissioner reports that since applicant's conviction for intoxication in 1962, there was no evidence of the commission of any crime, the making of any disturbance or unruly behavior on the part of the petitioner and no evidence of the use of intoxicating liquor on his part except his "having taken one" around the holiday season in December 1962.

The petitioner's exceptions are to Findings Nos. 6, 11 and 13 of the commissioner, it being claimed that these findings are not supported by the evidence.

Finding No. 6 reads as follows:

"The petitioner, for many years, had a serious alcoholic problem and his general behavior and court record hereinafter referred to was attributable in part at least to the excessive use of alcoholic

beverages. The petitioner testified that since June, 1962, he had not had a drink of intoxicating liquor and there is no evidence of his having taken one since the day before either Christmas 1962 or New Year's 1963."

The exception of the petitioner is to the phrase "in part at least" in the first sentence of the finding. Petitioner claims that the cause of his behavior and problems were alcohol and that the evidence supports this conclusion.

If the commissioner intended by this phrase that the general behavior and court record of the petitioner was only "in some degree" or "slightly" attributable to the excessive use of alcoholic beverages, such conclusion is not supported by the testimony and the records of the Franklin Municipal Court. The evidence shows a direct relationship between petitioner's indulgence of alcoholic beverages and his appearances in the Franklin Municipal Court on the minor criminal charges in 1952, 1955, 1959 and 1962. His use of intoxicants was involved in each instance.

There is at least a question as to whether the nature of the past behavior itself disqualifies the applicant in this case, in view of his assertions and evidence that he has abandoned it. The test is whether that behavior truly portrays an inherent and fixed quality of character of an unsavory, dishonest, debased and corrupt nature. Certainly dishonesty and corruption, unsavory and debased or otherwise, are not established. That his difficulties are not inherent is established by his unchallenged good record of the last four years. In this view, the particular degree to which his drinking problem contributed to the "cause" of his prior conduct is not critically material and the finding is acceptable.

Finding No. 11 relates to the employment record of the applicant with his employer, Central Vermont Railway. Based on the testimony of the Assistant Superintendent of Transportation of the railway company and a copy of the work record placed in evidence, the commissioner made findings concerning various instances of disciplinary action taken against the applicant by the railroad. Such actions resulted from the infraction of some rule of the railroad, working condition or some other working provision and dated as far back as 1944.

The company discharged the applicant on March 4, 1966. The evidence is undisputed that this action and two previous ones (1965,

1962) are under appeal. Being under appeal those matters are not final under the Railway Labor Act. The witness in question was the officer who investigated the complaint and wrote the letter of discharge to the applicant.

Counsel for the state did not file a brief but it appears from the transcript that he claimed this work record would show the loyalty or disloyalty of the applicant to his railroad employer and in this aspect it was very material as bearing upon, and showing an element of, the applicant's moral character. The commissioner admitted the testimony stating that he "should know about any evidence of disloyalty" to the applicant's employer.

Good moral character and fitness to practice law runs much deeper than loyalty to one's employer. These infractions which occurred over a period of some twenty years were not of the law. The work record does not reflect any conduct of the applicant which even amounts to a misdemeanor, much less involve moral turpitude. At most the infractions would indicate only whether or not the applicant was a competent employee. They are not a valid criterion to use in testing or judging applicant's moral character and integrity and furnish no basis for saying it is bad.

We agree that the facts set forth in Finding No. 11 are not material or relevant to the issue.

Finding No. 13 is as follows:

"The petitioner has a reputation in St. Albans as a rabble rouser and trouble maker and his general character reputation is not good and is not of the best."

This finding is apparently based on the testimony of three witnesses. One of these witnesses, on being asked as to the applicant's general character and integrity in his community of St. Albans, over the objection of applicant's counsel, answered "Well, my observations and my contacts with him and what I have observed since I resided in Burlington, I would say that his general character reputation was not good." He further said that he had had no contact with either Mr. or Mrs. Monaghan for the last 15 years.

It is clear from the answer given by the witness that his appraisal of the applicant's character was his own personal opinion and belief based upon his observation and contacts with the petitioner. Such knowledge of the petitioner is merely the product of the inference

and personal opinion of the witness. As such, it was inadmissible and improper, as well as incompetent, to show applicant's general character reputation in the community. *Teitle* v. *Lancashire Insurance Company, Ltd.*, 116 Vt. 228, 234, 73 A.2d 300.

By a rule which is almost universal (in the United States at least) the personal knowledge and belief of the witness to character is rigorously excluded, and the community-reputation is all that will be listened to. *Wigmore on Evidence, supra*, §§1980, 1985.

A person's general reputation is made up of what his neighbors and acquaintances think of him, basing their opinion on what they have observed and heard regarding his conduct in the past. *McDonough* v. *Goodcell*, 13 Cal. (2d) 741, 91 P.2d 1035, 123 A.L.R. 1205. See also 20 Am. Jur., Evidence §329.

Later, this same witness testified in answering an unrelated question that the petitioner had a reputation in St. Albans of being a "rabble-rouser" and "trouble maker." He gained this information from listening to the applicant being discussed in a barber shop in St. Albans. But on cross-examination he refused to say who the persons were he had heard talking or with whom he had talked because he didn't want the applicant to go to them.

The above rule applies with equal force and relevancy to these statements of the witness. Moreover, the refusal of the witness to give the information asked for cut off applicant's right to adequate cross-examination on the sole issue of this litigation. Accordingly we cannot accept this evidence in support of the facts stated or as character testimony having probative value.

A second witness was asked about Mr. Monaghan's "reputation in railroading as that reputation might bear on the question of integrity, honesty or loyalty to his employer." This question was improper and objected to. However, his answer to the question was, "As far as honesty is concerned, I cannot disclaim that the man was honest. I have no proof or evidence to the contrary. Mr. Monaghan does have a reputation of being troublesome."

In cross-examination this witness was asked, "Now, you, do I understand you now that you mean troublesome in the way he performed his job?" He answered, "Yes, sir." The witness also testified that he had "had an opportunity to read through the files and I find that it was not solely my opinion, because there is reference in cor-

respondence from other officers of the company which bear this out." This witness also indicated the petitioner was troublesome to the railroad in connection with his labor union activities as a representative of the firemen and hostlers union.

This testimony does not support the finding that the petitioner has a community-reputation in St. Albans as a trouble maker. Moreover, it is incompetent to show this fact by the personal opinion of the witness especially when founded on the information the witness says it was. *Teitle* v. *Lancashire Insurance Company, Ltd.,* and *Wigmore on Evidence, supra.*

The judge of the Franklin Municipal Court was asked concerning the reputation of the petitioner's good moral character. He answered, "Reputation for good moral character? I would say that his reputation as I know it, that it is not of the best."

In cross-examination this witness was asked, "(B)ut your opinion is based on the use, his use of alcohol, is that correct, primarily?" His answer was "Yes, and attitude. I in court here, I would,—that is where I would gain my impression and my opinion on that." He also testified of having had no contact with the petitioner since the last time the petitioner was in municipal court for intoxication in 1962.

Here, again, the evidence only shows the personal opinion or appraisal of the petitioner by the witness based on personal experience and contacts. The evidence fails to establish petitioner's character reputation in the community. The evidentiary rule stated above has relevancy here also.

Finding No. 13 is not supported by competent evidence. Adhering, as we must, to the well-settled and recognized rules of evidence we are compelled to disregard this finding in reaching our decision.

Finding No. 9 relates to facts surrounding petitioner's unruly conduct in his home in 1952 which resulted in his conviction for breach of peace. He found—"Whether he had been drinking on this occasion does not appear." At that time applicant was also charged with intoxication (later dropped) as shown by 122 Vt. at 201 and Exhibit 3 in this case. It is apparent from this evidence that the applicant had been drinking on this occasion. For this reason we must reject this portion of the finding as being contrary to the evidence.

Finding No. 14 relates to a divorce action filed by Mrs. Monaghan in June 1951, for intolerable severity. The case was discontinued in March 1952. The commissioner went on to find—"While the divorce

action was pending there were two occasions which reflected upon the petitioner's integrity, in that he was not truthful with the court and others."

The attorney who represented Mrs. Monaghan at that time testified that the petitioner was untruthful with the court on two occasions but his testimony related to only one. This testimony of the witness is based on information he learned on the day a hearing was to be held for a temporary order that Mr. Monaghan had called the judge and said he wouldn't be in town that day. It came to the witness' attention, and others, that the petitioner was in town all day. The facts testified to clearly appear to be hearsay. Moreover, the statement that the petitioner was untruthful with the court is merely the conclusion of the witness and depends upon hearsay for its validity.

This class of evidence is inadmissible to prove a given fact. Furthermore, the evidence lacks sufficient substance to support the above-quoted portion of the finding. For these reasons, we cannot accept it.

The proceedings in the matter at issue have been properly conducted and have accorded the applicant due process. The end in view has been to ascertain the moral character of the applicant which is a condition precedent to the privilege of taking the bar examinations. There is but one question to be determined: Does Carleton N. Monaghan possess the good moral character requisite for admission to the bar of this state?

The power of the court to reject the application on the grounds of moral delinquency is one of great delicacy, and should be exercised with extreme caution, and with a scrupulous regard for the character and rights of the applicant. But on the other hand, the standing of the profession must not be disregarded, nor must the court shrink from the performance of a clear duty however embarrassing. *In re Attorney's License,* 21 N.J.L., 345, 347.

■ Immoral conduct is that conduct which is willful, flagrant, or shameless, and which shows a moral indifference to the opinion of the good and respectable members of the community. *In re Hicks,* 163 Okl. 29, 30 P.2d 896.

The commissioner's report refers to the unruly behavior of the petitioner which occurred at the time of the offenses with which he was convicted in 1952 and 1959. However, the commissioner found that since the petitioner's last court appearance in 1962, there was

no evidence of any disturbance or unruly behavior on his part. Also, he found that there was no evidence of his use of intoxicating liquor except a possible occasion when he took one during the December holiday period in 1962. The petitioner himself testified that he had not had a drink of intoxicating liquor since June 1962.

The family physician of the Monaghans testified that the applicant was drinking "moderately heavy." To the doctor's knowledge, the applicant's habits changed in June or July of 1962 at which time this ceased to be a problem and "he hasn't had any alcohol, period," since then.

Since 1962, so far as the record and findings disclose, it appears that petitioner has regarded his frailty involving the excessive use of intoxicants in so serious a light that he has come to his senses, or sense of responsibility, and has overcome the habit. He now comes to this court and makes the representation that he has found the strength to correct his intemperate conduct by his self-discipline with respect to alcohol. The findings support this commitment.

 Except for the 1962 conviction for intoxication and giving the police officers a "hard time," there is no evidence or finding which tends to show any misconduct of the applicant since 1959, a period of around seven years. The inference to be drawn from this fact is that during this interim the applicant has produced a decided improvement in his conduct and behavior, and this in turn reflects favorably on his character. The applicant's *present* character is the point in issue. "What the character had formerly been is relevant only as it blends with the continuous web of life and tinges its present texture." *Williard* v. *Goodenough, supra,* at p. 397.

 Irrespective of whether the practice of law is a right or a privilege, a person cannot be prevented from practicing law except for valid reasons, such practice not being a matter of the state's grace. *Schware* v. *Board of Bar Examiners,* 353 U.S. 232, 1 L.Ed. 2d 796, 77 S.Ct. 752, 64 A.L.R. 2d 288; *Ex parte Garland* (U.S.) 4 Wall 333, 379, 18 L.Ed. 366, 370.

The last sentence of Finding No. 14 which related to the divorce proceedings brought by the applicant's wife in June 1951 and discontinued in March 1952 reads—"There is no evidence in the case which reflects directly upon his honesty or integrity since that time."

A ruling by us that the applicant has not shown good moral character must be reasonably supported by the record and for valid reasons. *Schware* v. *Board of Examiners, supra.*

Since our previous decision in 1960 on this same matter, a reasonable time has elapsed during which, in our opinion, the applicant has demonstrated by his conduct that his character has changed for the better.

The above-quoted finding of the commissioner does not show bad character. To the contrary, honesty and integrity are essential attributes of and show good character. ". . . . (A)bove all else, integrity is demanded." *Heiberger* v. *Clark, supra,* p. 657 of 169 A.2d. Also supporting good character are the additional facts that since 1960 there is no evidence of the commission of any crime and no evidence of unruly behavior or the making of any disturbance except on the occasion of his arrest for intoxication on May 31, 1962; also the lack of any evidence showing a continuance of applicant's alcoholic problem since June 1962. "In determining whether a person's character is good the nature of the offense which he has committed must be taken into account." *Schware* v. *Board of Bar Examiners, supra.*

On the record produced, the case lacks satisfactory proof of the applicant's bad moral character, or specific acts of immorality, untruthfulness, or dishonesty, which shows that he does not *presently* possess the requisite qualifications to take the bar examination.

It follows, from the views expressed that the matter is resolved in favor of the applicant and the order of the court is:

*The application of Carleton N. Monaghan to take the 1966 examinations for admission to the Vermont Bar is granted, the result to be certified to the Chairman of the Board of Examiners.*

**Holden, C.J.** Dissenting. When the question of the petitioner's character was previously considered by this Court, we held his prior convictions of criminal offenses indicated—"the want of that integrity which the law demands of those who are allowed the privilege of practicing law." At that time the report of the board of bar examiners demonstrated "an absence of that high character which the state intends shall be possessed of those who desire to practice as attorneys in the courts of this state." We concluded the decision of the board was well founded on sound premises and valid grounds. *In re Monaghan,* 122 Vt. 199, 206, 207, 167 A.2d 81, 86.

The record in the present proceedings reconstructs the details of the prior offenses. This is entirely appropriate, for in determining whether the applicant's character is good, the nature of the offenses he has committed must be taken into account. *Schware* v. *Board of Bar Examiners of New Mexico,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed. 2d 796, 64 A.L.R. 2d 288, 296.

To my mind, this further scrutiny in the hearings by the commissioner does not aid him. Concerning the 1952 offense, the evidence is undisputed that the petitioner, after mistreating his wife, went to an upstairs bedroom to obtain a gun. The arresting officer went upstairs to find "Mr. Monaghan—pointing a gun at his son Buzzy, who in turn had a gun, and the gun was taken away from Mr. Monaghan and he was arrested and brought to jail."

Neither was there contradiction of the police officer's testimony that the 1959 conviction for careless and negligent operation followed the petitioner's involvement in a motor vehicle accident in which the petitioner left the scene without stopping, until later apprehended by the police. The petitioner had been drinking, was forcibly uncooperative with the police and refused to submit to any of the prescribed chemical tests to determine the amount of alcohol present in his body fluids following the offense.

After having been denied the privilege of taking the bar examinations in 1960, the petitioner again became involved in an altercation with the police in the early summmer of 1962. On this occasion the petitioner was a passenger in his own vehicle. When a police officer undertook to check the license and registration of the operator the petitioner intruded himself into an argument with the officer. With abusive and offensive language he offered to fight the whole police department until he was forcibly restrained and lodged in jail.

Commendably, the petitioner has refrained from the use of intoxicants since this conviction and there is no record of subsequent offenses. His direction toward reformation and his recent history as a peaceable citizen in the four-year interval is indeed meritorious and praiseworthy. But in my judgment it does not establish satisfaction of the character requirement demanded of one seeking to enter the profession of the law.

The offenses which preceded rehabilitation involved dishonorable conduct, a predisposition to violence, even against members of his own family. These transgressions indicate a disrespect for law and

for those officers whose duty it is to enforce it. Such conduct is inconsistent with the sense of responsibility expected and required of one seeking to enter the legal profession. To be sure, alcohol may have been a predominant factor which might palliate the penal consequences of the offenses. But our concern in this instance is not with mitigation nor with sanctions.

Proceedings to gain admission to the bar are for the purpose of protecting the public and the courts from the ministrations of persons unfit to practice the profession. Attorneys are officers of the court appointed to assist the court in the administration of justice. Into their hands are committed the property, the liberty and sometimes the lives of their clients. This commitment demands a high degree of intelligence, knowledge of the law, respect for its function in society, sound and faithful judgment and, above all else, integrity of character in private and professional conduct. *Heiberger* v. *Clark,* 148 Conn. 177, 169 A.2d 652, 655, 657. Investigation of character, like examination into learning, is merely a test of fitness. *In re Rouss,* 221 N.Y. 81, 116 N.E. 782, 783.

By his admission the court endorses the applicant and holds him out to the public at large as an advocate possessing the knowledge, character and stability required to render him a worthy member of the profession. In admitting a candidate to practice law, we certify him to be a counselor "to whom all could safely confide and entrust their rights to property, liberty and life." *In re Enright,* 67 Vt. 351, 354, 31 Atl. 786, 787.

Where conditions of admission have been broken by past misconduct the applicant must prove his change in moral character is such that he can inspire public confidence. He must assure the court such confidence will be faithfully kept.

The record presented here establishes that the petitioner-has been registered pursuant to the rules of the Supreme Court since 1955. As a candidate for admission to the bar he placed himself under the solemn obligation to obey the law and be ruled by it. This condition has not been fulfilled. Accordingly, I am unable to certify with the majority that the petitioner has the requisite high moral character which the law demands and the public has the right to expect of members of the bar of this state.

Mr. Justice Shangraw joins in this dissent.

## Motion for Reconsideration

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

**Per Curiam.** The State has moved for reconsideration of the decision in this matter. It questions the result as an overruling of the Board of Bar Examiners, without meeting the test as to abuse of discretion set forth in *In re Monaghan,* 122 Vt. 199, 205-6, 167 A.2d 81.

As the opinion states, the application of Carleton Monaghan to take the 1966 bar examination has never been before the Board for disposition. On the contrary, the application was made directly to this Court and, at the specific recommendation of the Board, referred to a commissioner for hearing in the first instance. In accordance with the Board's suggestion, the rule provided that the commissioner's report be made direct to this Court. No action of the Board is under review in this case. No ground for reconsideration has been made to appear.

*Motion denied.*